IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 19-cv-02504-RBJ

KEVIN AUWAE,

    Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

    Defendant.

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on defendant Metropolitan Life Insurance Company ("MetLife")'s motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6). ECF No. 13. For the reasons stated herein, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

Defendant MetLife issued Group Life Insurance Policy Number 13984-1-G (the "group policy") to The Boeing Company ("Boeing"). ECF No. 1 ¶ 10. Boeing made the group policy available to its employees and their dependents. *Id.* The group policy provides: "If a Dependent commits suicide within 2 years from the date Life Insurance for such Dependent takes effect, We will not pay such insurance . . . ." *Id.* ¶ 14.

Plaintiff Kevin Auwae is an employee of Boeing. ECF No. 1 ¶ 9. When Mr. Auwae began working for Boeing on October 16, 2009, he enrolled both himself and his then-wife, Maria Auwae, in that life insurance. *Id.* Mr. and Mrs. Auwae's initial coverage under the group policy began on November 1, 2009. *Id.* ¶ 11. Mr. and Mrs. Auwae both remained insured under

1

the group policy through December 31, 2015.  *Id.* ¶ 17.  As of January 1, 2016 Mrs. Auwae was un-enrolled under the group policy.  *Id.* ¶ 18.  She re-enrolled under the group policy effective January 1, 2018 with coverage of $250,000.  *Id.* ¶ 19.  Mr. Auwae was Mrs. Auwae's beneficiary.  *Id.* ¶ 35.

On February 4, 2019 Mrs. Auwae passed away by suicide in Colorado.  *Id.* ¶ 34.  On February 27, 2019 Mr. Auwae submitted a Life Insurance Claim Form to MetLife seeking $250,000 in benefits.  *Id.* ¶ 35.  MetLife denied the claim approximately two weeks later, asserting that coverage was barred because the group policy excluded deaths by suicide within the first two years of coverage.  *Id.* ¶ 36.

In a letter dated May 1, 2019 Mr. Auwae requested MetLife provide him with "the claim file and other documents" so that he could perfect his internal appeal of the benefit denial.  *Id.* ¶ 38.  MetLife failed to provide him with all of the requested documents.  *Id.* ¶ 39.  Mr. Auwae then submitted an internal appeal in a letter dated June 7, 2019.  *Id.* ¶ 40.  He argued that the initial denial of benefits was wrong because (1) the group policy's two-year exclusion on coverage for deaths caused by suicide was unenforceable under Colorado Revised Statute § 10-7-109; and (2) even if the group policy's two-year exclusion were enforceable, Mrs. Auwae's death did not occur within two years of the date that her coverage first took effect on November 1, 2009.  *Id.* ¶ 41.  MetLife upheld its decision to deny Mr. Auwae's claim in a letter dated August 8, 2019.  *Id.* ¶ 45.

Mr. Auwae filed his complaint with this Court on September 3, 2019.  ECF No. 1.  He asserts two claims for relief against MetLife under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq*.  He brings his first claim for benefits due under the group policy pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  ECF No.

1 ¶¶ 66–75. He brings his second claim for penalties pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c), for failure to disclose requested requisite documents within thirty days of receiving such request. ECF No. 1 ¶¶ 76–81.

MetLife filed the instant motion to dismiss for failure to state a claim. ECF No. 13. In response to Mr. Auwae's first claim for benefits, MetLife argues that Mrs. Auwae's coverage took effect when she re-enrolled on January 1, 2018, which is within the two-year exclusion on coverage for deaths caused by suicide; and that Colorado Revised Statute § 10-7-109 does not invalidate that two-year exclusion because the statute does not apply to group life insurance policies. *Id.* at 6–7. In response to Mr. Auwae's second claim for penalties, MetLife argues that § 1132(c) applies only to plan administrators, and thus does not apply to MetLife in its capacity as Claim Administrator. *Id.* at 10.

## II. STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See Twombly*, 550 U.S. at 556. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a

claim for which relief may be granted." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

## III.  ANALYSIS

### A.  Benefits Claim and Colo. Rev. Stat. § 10-7-109

Colorado Revised Statute § 10-7-109 nullifies suicide exclusions longer than one year in life insurance policies. *See* Colo. Rev. Stat. § 10-7-109. The parties dispute whether § 10-7-109 applies to group life insurance policies. ECF No. 13 at 7–8; ECF No. 14 at 6–10. In interpreting Colorado state statutes, federal courts are bound by the interpretations of the Supreme Court of Colorado. *See Phelps v. Hamilton*, 59 F.3d 1058, 1071 (10th Cir. 1995). "The decisions of lower state courts, while persuasive, are not dispositive." *Long v. St. Paul Fire & Marine Ins. Co.*, 589 F.3d 1075, 1081 (10th Cir. 2009). Where the Supreme Court of Colorado has not addressed the issue, federal courts must look to Colorado's rules of statutory construction to predict how that court would rule. *See Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1093 (10th Cir. 2010).

Under Colorado law, the "primary task in construing a statute is to give effect to the intent of the General Assembly," which requires courts to "look first to the plain language of the statute." *Farmers Grp., Inc. v. Williams*, 805 P.2d 419, 422 (Colo. 1991); *see also* Colo. Rev. Stat. § 2-4-212. "[A] statute must be read and considered as a whole. Where possible, the statute should be interpreted so as to give consistent, harmonious, and sensible effect to all its parts." *People v. Dist. Court*, 713 P.2d 918, 921 (Colo. 1986) (citation omitted); *see also* Colo. Rev. Stat. § 2-4-101.

The Supreme Court of Colorado has not had occasion to address whether § 10-7-109 applies to group policies. It has, however, recently noted the "longstanding public policy in

Colorado that disfavors suicide exclusions." *Renfandt v. New York Life Ins. Co.*, 419 P.3d 576, 584 (Colo. 2018). It has also noted, in the context of differentiating between voluntary and "involuntary" (self-destruction without the intent to kill oneself) suicide, that § 10-7-109 was "capable of but one rational construction, namely, that it was the intent and purpose of the Legislature to prevent all companies, of whatsoever kind or character, issuing life insurance contracts, from escaping payment thereon, in the event of death, simply on the ground that the insured committed suicide." *Id.* (quoting *Head Camp Pac. Jur., Woodmen of the World v. Sloss*, 112 P. 49, 50 (Colo. 1910)) (noting that the statute was later amended to apply only after the first policy year).

The Colorado Court of Appeals has had occasion to address the application of § 10-7-109 to group policies. In *Ownbey v. General United Life Insurance Co.* the Colorado Court of Appeals applied § 10-7-109 to a "group credit life insurance policy" that a bank had obtained on the lives of its debtors for the balance of their respective debts. 524 P.2d 636, 636 (Colo. Ct. App. 1974) (applying the statute as then codified at Colo. Rev. Stat. § 72-3-23 (1963)).

MetLife argues that the group credit policy in *Ownbey* is sufficiently dissimilar from MetLife's group policy to prevent extrapolation. ECF No. 16 at 5. Yet the Colorado Insurance Code appears to treat group credit policies as merely a type of group policy. Section 10-7-202(1)—the section in the Colorado Insurance Code laying out the requisite provisions for all group policies—indicates that half of those requisite provisions apply to group credit policies. *See* Colo. Rev. Stat. § 10-7-202(1) (decreeing that of the ten requisite provisions in paragraphs (a) through (j), "paragraphs (f) to (j) . . . shall not apply to policies issued to a creditor to insure debtors of such creditor"). I interpret the statutory scheme as treating group credit policies as a type of group policy, and I thus interpret *Ownbey* as applying § 10-7-109 to a group policy.

*Ownbey*, however, is not a Supreme Court of Colorado opinion. It is thus persuasive but not dispositive. *See Long*, 589 F.3d at 1081.

Mr. Auwae argues that in addition to the Colorado Court of Appeals, the District of Colorado has also applied § 10-7-109 to group life insurance. In *The Wellinger Family Trust v. Hartford Life & Accident Insurance Co.*, No. 11-cv-02568-CMA-BNB, 2013 WL 5339160 (D. Colo. Sept. 24, 2013), the court considered both a group policy and a portability policy. Contrary to Mr. Auwae's assertions, the court applied § 10-7-109 only to the portability policy and not the group policy. *See id.* at *5 & n.4 (noting that defendant conceded that § 10-7-109 applied to the portability policy). Because the portability policy was a conversion of the group policy into an individual policy, I cannot extrapolate the court's application of § 10-7-109 here as an application to a group policy. *See id.* at *2.

Keeping *Ownbey* in mind, I continue on to a plain language analysis of § 10-7-109. *See Farmers Grp.*, 805 P.2d at 422. Section 10-7-109 reads in relevant part: "The suicide of the policyholder after the first policy year of *any life insurance policy issued by any life insurance company* doing business in this state shall not be a defense against the payment of a life insurance policy, whether said suicide was voluntary or involuntary, and whether said policyholder was sane or insane." Colo. Rev. Stat. § 10-7-109 (emphasis added).

Mr. Auwae argues persuasively that the phrase "any life insurance policy issued by any life insurance company" encompasses all types of life insurance, including group policies. ECF No. 14 at 7. Indeed, nothing in the language of § 10-7-109 expressly limits it to individual policies. However, MetLife argues that the use of the word "policyholder" indicates that the statute does not apply to group policies. MetLife explains that in group policies the

6

"policyholder" is the company, i.e. Boeing, not the insured individual; and because a company cannot commit suicide, § 10-7-109 cannot apply to group policies. ECF No. 13 at 7.

Yet Colorado courts interpreting § 10-7-109 treat "policyholder" and "insured" as interchangeable. *See, e.g.*, *Renfandt*, 419 P.3d at 586 ("[A] policy exclusion for 'suicide . . . while sane or insane' still requires an insurer to show that the *insured's* death was a 'suicide.'") (emphasis added); *Ownbey*, 524 P.2d at 636–38 (referring repeatedly to the "insured" in applying the statute); *Capitol Life Ins. Co. v. Di Iullo*, 53 P.2d 1183, 1184 (Colo. 1935) ("[A]ny provision attempting to relieve the insurer from liability in case the *insured*, after the first policy year, commits suicide, whether sane or insane at the time, is rendered void by the statutory provision quoted above.") (emphasis added); *Officer v. London Guarantee & Acc. Co.*, 220 P. 499, 499–500 (Colo. 1923) (referring repeatedly to the "insured" in applying the statute); *Head Camp*, 112 P. at 50 (noting that the statute prohibits insurers "from escaping payment thereon, in the event of death, simply on the ground that the *insured* committed suicide") (emphasis added). While MetLife is correct that all of these cited examples are cases applying the statute to an individual policy, that context does not change the fact that Colorado courts use these two words interchangeably.

MetLife also presents a statutory construction argument. It claims that Part 1 of the Colorado Insurance Code applies only to individual policies, and that therefore § 10-7-109, which is in Part 1, must apply only to individual policies. ECF No. 13 at 7. MetLife proffers two facts to support its argument that Part 1 applies only to individual policies. First, it notes that Part 2 of the Colorado Insurance Code applies exclusively to group policies. *Id.* Second, it references § 10-7-202, within Part 2, which provides that "the standard provisions required for individual life insurance policies shall not apply to group life insurance policies." Colo. Rev.

Stat. § 10-7-202(1). Yet neither of these two facts indicate that Part 1 applies exclusively to individual policies.

First, the fact that Part 2 applies exclusively to group policies does not mean that Part 1 applies exclusively to individual policies. To the contrary, whereas Part 2 is named "Group Life Insurance," Part 1 is named "General." Further, some sections within Part 1 expressly refer to group policies. *See, e.g.*, Colo. Rev. Stat. § 10-7-112 (regarding interest payable on benefits or proceeds and providing that "[f]or the purposes of this section, the term 'life insurance' shall include: (a) [a]ll individual and group life insurance policies"); Colo. Rev. Stat. § 10-7-114 (providing that actuarial opinions prior to the operative date of the valuation manual "must apply to all business in force including individual and group health insurance plans"). In a similar vein, one section within Part 1 expressly limits itself to individual policies, which would be surplusage if Part 1 encompassed only individual policies. *See* Colo. Rev. Stat. § 10-7-105.5 (requiring written notice of lapse of "individual life insurance policies"). At the very least, these mixed references indicate that Part 1 is not exclusive to individual policies.

Second, MetLife's citation to § 10-7-202 is also unavailing. Section 10-7-202 provides that "the standard provisions required for individual life insurance policies shall not apply to group life insurance policies." Colo. Rev. Stat. § 10-7-202(1). MetLife argues that "standard provisions" refers to each individual section within Part 1, and therefore § 10-7-202 expressly exempts group policies from the mandates of § 10-7-109. ECF No. 16 at 6. Yet "standard provisions" refers not to each section within Part 1 but rather specifically to § 10-7-102. Section 10-7-102 provides: "It is unlawful for any foreign or domestic life insurance company to issue or deliver in this state any life insurance policy unless the same contains the following *provisions*: . . . ." Colo. Rev. Stat. § 10-7-102(1) (emphasis added). Contrary to MetLife's argument, § 10-7-

8

202 thus does not exempt group policies from the mandates of § 10-7-109. Put another way, § 10-7-109 is a statutory limitation, not a requisite "standard provision." Colo. Rev. Stat. § 10-7-202(1).

The plain language of § 10-7-109 indicates that it applies to "all" insurance policies, including group policies. Colo. Rev. Stat. § 10-7-109. The statutory construction of the Colorado Insurance Code as a whole does not contradict that interpretation. The Colorado Court of Appeals has applied § 10-7-109 to a group policy, *see Ownbey*, 524 P.2d at 636, and the Supreme Court of Colorado has emphasized the "longstanding public policy in Colorado that disfavors suicide exclusions," *Renfandt*, 419 P.3d at 584. Given this analysis, I predict that the Supreme Court of Colorado would interpret § 10-7-109 as applying to group policies.

As such, I apply § 10-7-109 to the group policy at issue here. That statute acts to reduce the group policy's two-year suicide exclusion to a one-year suicide exclusion. Mrs. Auwae re-enrolled in the group policy effective January 1, 2018, and she passed away by suicide over one year later on February 4, 2019.[1] ECF No. 1 ¶¶ 19, 34. Because Mrs. Auwae's suicide occurred after the first policy year of the group policy's issuance, the suicide exclusion within the group policy does not bar Mr. Auwae from recovery of insurance benefits.

Accordingly, MetLife's motion to dismiss Mr. Auwae's first claim for relief against MetLife for benefits due under § 1132(a)(1)(B) is denied.

### B. Penalties Claim

ERISA provides:

> "Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or

---

[1] Because I find that § 10-7-109 applies to group policies, I do not address the parties' dispute over precisely when Mrs. Auwae's coverage took effect. MetLife concedes that Mrs. Auwae's coverage took effect at the latest on January 1, 2018. ECF No. 13 at 5. I make no ruling on whether Mrs. Auwae's coverage instead took effect on November 1, 2009. ECF No. 14 at 10–12.

9

> beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary . . . ."

29 U.S.C. § 1132(c)(1). ERISA defines "administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A). Here, the "instrument under which the plan is operated" is the Summary Plan Description. ECF No. 14 at 13. The parties agree that the Summary Plan Description designates the Employee Benefit Plans Committee ("Plans Committee") as the plan administrator and MetLife as the claim administrator. ECF No. 13 at 10; ECF No. 14 at 13; ECF No. 16 at 7. A claim administrator is the fiduciary named for deciding claims and appeals. ECF No. 14 at 15.

The parties dispute who can be held liable as an administrator under § 1132(c). MetLife asserts that "administrator" refers exclusively to the plan administrator. ECF No. 13 at 10–11. Mr. Auwae responds that "administrator" refers to any administrator, including the claim administrator. ECF No. 14 at 13. Mr. Auwae acknowledges that under § 1132(c) only a plan administrator may be liable for failure to provide plan documents. *Id.* at 13–13; *McKinsey v. Sentry Ins.*, 986 F.2d 401, 404–05 (10th Cir.1993). He argues, however, that a claim administrator may be liable for failure to provide claim documents. ECF No. 14 at 13–14.

Mr. Auwae's broad reading of § 1132(c) is incorrect. The Tenth Circuit has held that § 1132(c) refers only to the plan administrator's duties. *See Walter v. Int'l Ass'n of Machinists Pension Fund*, 949 F.2d 310, 315 (10th Cir. 1991) (finding that § 1132 "do[es] not address plan duties—instead, [it] only refer[s] to the plan administrator's duties"). Section 1132(c) does not provide a cause of action against anyone, whether plan administrator or claim administrator, for failure to fulfill claim administrator duties.

District courts within the District of Colorado have rejected efforts by ERISA claimants to assert claims under § 1132(c) against insurance company claim administrators that were not the designated plan administrator. *See, e.g.*, *Philippus v. Aetna Life Ins. Co.*, No. 07-CV-02682-JLK-KLM, 2010 WL 3075485, at *7 (D. Colo. June 10, 2010), *report and recommendation adopted sub nom. Philippus v. Aetna Health, Inc.*, No. 07-CV-02682-JLK, 2010 WL 3081462 (D. Colo. Aug. 5, 2010) ("Only a plan administrator may be held liable under § 1132(c)(1)(B)."); *Lederman v. Analex Corp.*, No. CIVA06CV00825EWNMEH, 2008 WL 2900915, at *2 (D. Colo. July 23, 2008) (internal citations omitted) ("Plaintiff argues that section 1132(c) applies to Defendant because the statute uses the term "any administrator" instead of "plan administrator." The court disagrees. The Tenth Circuit has already held that section 1132 only refers to the plan administrator's duties.").

Mr. Auwae makes the policy argument that allowing MetLife to escape liability under § 1132(c) simply because it is a claim administrator would flout ERISA regulations. ECF No. 14 at 15–16. It is true that ERISA requires claim administrators to provide claimants with copies of "all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii). The "relevant" documents during an internal appeal may include those found in the claim administrator's claim file, to which only claim administrators have access. Allowing claim administrators to refuse to provide such documents without fear of liability under § 1132(c) would, argues Mr. Auwae, render that statute "toothless." ECF No. 14 at 16.

Yet one district court has already pointed out the hole in this logic. *See Brucks v. Coca-Cola Co.*, 391 F. Supp. 2d 1193, 1212 n.18 (N.D. Ga. 2005) (rejecting the argument that failure to provide documents "'relevant' to a claim for benefits under C.F.R. § 2560.503–1(g) or its

11

current equivalent constitutes a failure to provide information 'required by this subchapter' under Section 1132(c))"). A claim administrator does not escape liability merely because he cannot be liable under § 1132(c). Rather, "an administrator's failure to provide information may result in a determination that it did not accord the claimant a 'full and fair review,' and that its denial of the plaintiff's claim was therefore arbitrary and capricious." *Id.* (citing *Doe v. Travelers Ins. Co.*, 167 F.3d 53, 60 (1st Cir. 1999)). Therefore in theory, claim administrators could be liable under § 1132(a)(1)(B) for failing to provide relevant requested information. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109–11 (1989) (finding that in an action brought under § 1132(a)(1)(B), discretionary actions of fiduciary reviewed under arbitrary and capricious standard); *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992) (noting that where the plan gave the administrator discretion, the district court reviewed the administrator's actions under an arbitrary and capricious standard).

I find that Tenth Circuit precedent mandates the conclusion that § 1132(c) imposes liability only on plan administrators, not on claim administrators. *See Walter*, 949 F.2d at 315. Therefore MetLife, as Claim Administrator, cannot be liable under § 1132(c) for failure to provide claim documents.

Accordingly, I grant MetLife's motion to dismiss Mr. Auwae's second claim under § 1132(c).

**ORDER**

Defendant's motion to dismiss, ECF No. 13, is GRANTED in part and DENIED in part. Defendant's motion to dismiss is denied with respect to plaintiff's first claim for benefits due under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). The Court dismisses plaintiff's second claim for penalties under ERISA § 502(c), 29 U.S.C. § 1132(c).

DATED this 2nd day of March, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge